UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABONILICO LAMAR CARROLL, CDCR #BK-9830,<br><br>                              Plaintiff,<br><br>v.<br><br>SAN DIEGO COUNTY JAIL SHERIFF; DEPUTY CAMPBELL; DEPUTY SHERIFFS SUPERVISORS; CITY OF SAN DIEGO,<br><br>                              Defendants. | Case No.: 3:19-cv-02073-AJB-NLS<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 6]**<br><br>**AND**<br><br>**(2) SUA SPONTE DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND § 1915A(b)(1)** |

On October 28, 2019, Abonilico Lamar Carroll ("Plaintiff"), a former pretrial detainee[1] at the San Diego County Central Jail ("SDCCJ") in San Diego, California, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. *See* ECF No. 1 ("Compl."). Plaintiff

---

[1] According to Plaintiff's Trust Fund Account Statement filed on May 7, 2020, he is currently incarcerated at North Kern State Prison in Delano, California. *See* ECF No. 6 at 1.

seeks injunctive relief enjoining Defendants from conducting "illegal searches" on persons who have not yet been convicted, and $17 million in general and punitive damages based on claims that he was unlawfully strip searched at the SDCCJ on September 19, 2019. *Id.* at 1-2, 4-6, 8.[2]

On December 9, 2019, the Court denied Plaintiff's initial motion to proceed in forma pauperis ("IFP") because Plaintiff failed to include a certified trust account statement. *See* 28 U.S.C. § 1915(b)(1). Therefore, the Court dismissed Plaintiff's case, but granted him forty-five (45) days to either pay the entire $400 filing fee or properly move to proceed IFP. *See* ECF No. 3.

On December 26, 2019, the Court's December 9, 2019 Order was returned as undeliverable. *See* ECF No. 4. Approximately one week later, on January 2, 2020, Plaintiff notified the Court of his change of address, but the case remained closed. *See* ECF No. 5. On May 7, 2020, however, Plaintiff submitted a Prisoner Trust Fund Account Statement, which the Court now liberally construes as his intent to re-open the case, and to renew his initial request to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See* ECF No. 6.

## I.    Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of

---

[2] Because Plaintiff has since been convicted and is no longer detained at the SDCCJ, his claims for injunctive relief with respect to SDCCJ policy or procedure have been rendered moot. *See Darring v. Kincheloe*, 783 F.2d 874, 876–77 (9th Cir. 1986) (inmate's claim for injunctive relief should be dismissed as moot when transferred to another prison and no reasonable expectation or demonstrated probability that he would again be subjected to conditions from which he seeks injunctive relief); *see also Wiggins v. Alameda Cnty. Bd. of Supervisors*, No. C 94-1172 VRW, 1994 WL 327180, at *2 n.1 (N.D. Cal. June 22, 1994) (noting that prisoner lacked standing to seek injunctive relief related to prison conditions at Alameda County Jail because he had been transferred to San Quentin State Prison).

$400.[3] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

As noted above, Plaintiff has now submitted a certified copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report showing his trust account activity. *See* ECF No. 6 at 1; 28 U.S.C. § 1915(a)(2); S.D. Cal.

---

[3] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

CivLR 3.2; *Andrews*, 398 F.3d at 1119. This statement shows that Plaintiff had no available funds to his credit at the time of filing. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

Therefore, the Court **GRANTS** Plaintiff's renewed Motion to Proceed IFP (ECF No. 6), declines to exact any initial filing fee because his trust account statement shows he "has no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Secretary of the CDCR to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id.*

**II.     Initial Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A**

    A.     <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (discussing 28 U.S.C. § 1915(e)(2)) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

/ / /

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Federal Rules of Civil Procedure 8 and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. Plaintiff's Allegations

Plaintiff's Complaint names the "San Diego County Jail Sheriff," Deputy Campbell, "Deputy Sheriffs Supervisors," and the City of San Diego as Defendants. *See* Compl. at 2.

On September 19, 2019, Plaintiff claims he and several other inmates at the SDCCJ were "wok[en] up out of [their] sleep in the middle of the night" and ordered "to the recreational yard" for unknown reasons. *Id.* at 3-4. Plaintiff alleges an unidentified deputy carried a shotgun from behind the group, intimidated and "scream[ed] threats to do harm" while he followed his fellow detainees toward the yard. *Id.* at 3. After the detainees' personal property was searched, Plaintiff claims he was told to strip despite complaining to Deputy Campbell that he had already been "strip frisked," x–rayed, and searched when he was initially booked into the county jail. *Id.* at 3, 4. Plaintiff also claims he told Deputy Campbell that he did not want to "show him [his] body" because he was a victim of sexual

abuse in the past. *Id.* Plaintiff further alleges that Deputy Campbell told him that the strip search "wasn't his call[,] it was his superior['s]." *Id.* at 4.

Plaintiff claims the strip search "triggered [his] PTSD" and a bout of depression due to "being sexually abused by gun[g]-ho deput[ies] humiliating inmates [by] looking into inmates' anuses just for giggles and laughs." *Id.* at 3.

Plaintiff also claims that the San Diego County Jail Sheriff and other unnamed Deputy Sheriffs Supervisors—including the SDCCJ's watch commander—violated his constitutional rights because they "gave the authorization and command to search all inmates against their will under intimidation, fear, and under duress." *Id.* at 2. Additionally, Plaintiff seeks to hold the Sheriff liable because all inmates "are under his direct care and supervision" and because his subordinates report to him. *Id.* at 5.

Finally, Plaintiff claims the City of San Diego violated his constitutional rights because it gave its "subordinates the power to do any and all things" to its inmates "under [its] care and supervision." *Id.* at 2.

C.  42 U.S.C. § 1983

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

D.  Discussion

  1.  *Supervisor Liability*

As pleaded, it appears Plaintiff seeks to hold the "San Diego County Jail Sheriff" and other unnamed "Deputy Sheriffs Supervisors" liable for the acts of their subordinates. *See* Compl. at 2. Plaintiff claims that "the Sheriff of San Diego is responsible for the treatment his subordinates" give inmates. *Id.* at 5. Moreover, he claims that "all of the

supervisors"—including the watch commander and other unnamed sergeants and lieutenants—gave their subordinates the order for the "dehumanizing search[ ]." *Id.* at 6.

Plaintiff includes no further factual allegations describing any individual acts or omissions from the Sheriff or any other unnamed county supervisors. As such, his broad and generalized allegations fail to show how, or to what extent, the Sheriff or any of the unnamed supervisors may be held individually liable for any constitutional injury. *See Iqbal*, 556 U.S. at 676-77; *Jones v. Cmty. Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim). "[V]icarious liability is inapplicable to . . . § 1983 suits." *Iqbal*, 556 U.S. at 676. Instead, "Plaintiff must plead that each Government-official defendant, through [his] own individual actions, has violated the Constitution" in order to plead a plausible claim for relief. *Id.*; *see also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisor may be held liable under §1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation") (citations and internal quotation marks omitted).

As pleaded, Plaintiff's Complaint is devoid of factual allegations sufficient to show that the San Diego County Sheriff "participated in or directed [other deputies'] violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009); *accord Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011) ("A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979) (when a named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged); *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 101

/ / /

(S.D. Cal. 2018) ("Liability under § 1983 arises only upon a showing of personal participation by the defendant.").

### 2. *Monell* Municipal Liability Claims

To the extent Plaintiff seeks to bring claims against the City or County of San Diego,[4] the Court also finds he has failed to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); § 1915A(b)(1). Local government entities can be held liable under § 1983 if the allegedly unconstitutional actions of its employees are alleged to have been taken pursuant to a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Alternatively, local government entities also can be liable for adopting an unconstitutional custom, even if such custom has not received formal approval through the body's official decision-making channels. *Id.* at 690-91. But a local government entity cannot be held liable under § 1983 simply because it employs someone who has allegedly acted unlawfully. *Id.* at 691, 694.

Here, Plaintiff fails to specify which municipal policy or custom was the "moving force" behind the alleged deprivation of his constitutional rights. *Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 400 (1997). Instead, he claims generally that the alleged unconstitutional search committed by Deputy Campbell was pursuant to the County's "system" of "friv[o]lous searches." *See* Compl. at 5, 6. Such general allegations fall short of pleading a viable *Monell* claim, as they are vague, conclusory, and speculative. *See Iqbal*, 556 U.S. at 678; *Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012) (applying *Iqbal* pleading standards to *Monell* claims). Therefore, the

---

[4] To the extent Plaintiff seeks to hold the City of San Diego liable for "employ[ing] these deputy sheriff[s] inside their County Jail system" *see* Compl., at 2, the City is not a proper party. *See Leon v. Cnty. of San Diego*, 115 F. Supp. 2d 1197, 1203 (S.D. Cal. 2000) (concluding that the San Diego County Sheriff "acts on behalf of the county, not the state, when operating the San Diego County Jail and making policy concerning the treatment of inmates or arrestees.").

Court concludes that Plaintiff's *Monell* claims against the City, the County, and/or the County Sheriff must also be dismissed for failure to state a claim upon which relief may be granted pursuant to § 1983.

### 3. Strip Search Claim

Plaintiff's main underlying claim is that his September 19, 2019 strip search was an illegal search and seizure. *See* Compl. at 2-6. The Fourth Amendment applies to a jail's policy of strip searches of detainees. *See Bull v. City of San Francisco, et al.*, 595 F.3d 964, 974-75, 982 (9th Cir. 2010) (en banc) (upholding San Francisco County Jail policy "requiring strip searches of all arrestees classified for custodial housing in the general population []as facially reasonable under the Fourth Amendment, notwithstanding the lack of individualized reasonable suspicion as to the individuals searched."). Generally, strip searches do not violate the Fourth Amendment rights of prisoners or pretrial detainees, so long as they are conducted in a reasonable manner. *See Bell v. Wolfish*, 441 U.S. 520, 561 (1979) (finding routine body cavity searches of inmates after outside contact to be constitutional if conducted in a reasonable manner); *see also Florence v. Bd. of Chosen Freeholders of the Cnty. of Burlington*, 566 U.S. 318, 324, 339 (2012) (holding that strip searches involving the removal of pretrial detainee's clothing and visual inspection of his ears, nose, mouth, hair, scalp, skin, "other body openings," genitalia, and rectal cavity, "regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history," are reasonable searches under the Fourth Amendment)); *see also Yourke v. City & Cty. of San Francisco*, 473 F. App'x 725, 726 (9th Cir. 2012).

Still, "intentional harassment of even the most hardened criminals cannot be tolerated" by the Fourth Amendment's protections. *Hudson v. Palmer*, 468 U.S. 517, 528 (1984). Thus, strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" may be unconstitutional. *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988); *see also Shorter v. Baca*, 895 F.3d 1176, 1191 (9th Cir. 2018) (noting that court need not defer to jail officials "if plaintiffs in § 1983 actions demonstrate

that they have been subjected to search procedures that are an unnecessary, unjustified, or exaggerated response to concerns about jail safety."). However, strip searches that are limited to "visual inspection," even if "invasive and embarrassing," are not necessarily unreasonable. *See Bull,* 595 F.3d at 975 (holding that visual strip searches that are held in a "professional manner and in a place that afforded privacy" and done to prevent the smuggling of contraband did not violate Fourth Amendment).

Determining if a search is reasonable under the Fourth Amendment requires that a court conduct a case-by-case "'balancing of the need for the particular search against the invasion of personal rights that the search entails.'" *Id.* at 972 (quoting *Bell*, 411 U.S. at 558). "The required factors for courts to consider include: (1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." *Byrd v. Maricopa Cnty Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011) (en banc) (internal quotation marks omitted).

Here, Plaintiff fails to allege sufficient facts sufficient to show his September 19, 2019 strip search was unreasonable. Routine visual body cavity searches without physical contact satisfy the Fourth Amendment, the justification being a means to prevent the smuggling of contraband and weapons within the facility. *See Bell*, 441 U.S. at 559; *Bull*, 595 F.3d at 976. Plaintiff contends the September 19, 2019 search was conducted "in the middle of the night," *see* Compl., at 3–4, but he offers no "further factual enhancement" to suggest any improper justification, and does not explain how or why the scope, manner, circumstance, or the place in which it was conducted rendered it unreasonable. *See Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 557); *see Jefferson v. Villanueva,* No. CV 19-8140-PA (KK), 2020 WL 551597, at *7 (C.D. Cal. Feb. 4, 2020) (finding pretrial detainee's claims of being woken up early, ordered to strip in the rec yard, and told to "bend over and c[ough] 10 to 15 times," while a Los Angeles County sheriff's deputy shined a flashlight on his buttocks while he held his own "but[t] cheeks apart," insufficient to state a Fourth Amendment claim for relief); *cf. Byrd*, 629 F.3d at 1141–42 (finding strip search of male pretrial detainee unreasonable where female cadet touched detainee's inner and

outer thighs, buttocks, and genital area with latex gloved hand through very thin boxer shorts). Although the Court sympathizes with Plaintiff's PTSD and claims of past sexual abuse, he does not allege that the September 19, 2019 strip search involved any forcible physical touching or potential sexual assault. *See* Compl. at 2-4.

Therefore, the Court concludes that as currently pleaded, Plaintiff's allegations against Deputy Campbell are insufficient to state plausible Fourth Amendment claim to relief. *See Iqbal*, 556 U.S. at 678.

### 4. Fourteenth Amendment Claim

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016). Plaintiff alleges that the September 19, 2019 strip search violated his Eighth and Fourteenth Amendment rights. *See* Compl. at 2-6. Because he was a pretrial detainee at the time, however, *see id.* at 8, the Eighth Amendment does not apply. "[W]hen determining whether the Eighth or Fourteenth Amendment governs an inmate's claim, '[t]he critical juncture is conviction, either after trial or ... by plea, at which point the state acquires the power to punish and the Eighth Amendment is implicated.'" *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (quoting *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990)).

Until recently, the Ninth Circuit applied a single "deliberate indifference" test when analyzing claims brought by persons in custody whether they arose under the Eighth or the Fourteenth Amendment. *See Castro*, 833 F.3d at 1068 (citing *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010)). However, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court made clear that proof of an intent or motive to punish is not required for a pretrial detainee to prevail on a claim that his due process rights were violated, and concluded that "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 398. The

Ninth Circuit has interpreted *Kingsley* as "reject[ing] the notion that there exists a single 'deliberate indifference' standard applicable to *all* § 1983 claims, whether brought by pretrial detainees or by convicted prisoners." *Castro*, 833 F.3d at 1069. The Ninth Circuit held in *Castro* that an objective standard of reasonableness should apply to failure-to-protect claims under the Fourteenth Amendment. *Id.* at 1070-71. The Ninth Circuit has since extended the "objective deliberate indifference" standard to Fourteenth Amendment claims of inadequate medical care. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018).

It remains unclear if *Kingsley*'s objective deliberate indifference standard applies beyond excessive force, failure-to-protect, and medical care claims to encompass all claims raised by a pretrial detainee involving the conditions of his or her confinement. *See Cheung v. Sequeira*, Civ. No. 17-00257 DKW-KSC, 2017 WL 3431586, at *3 (D. Haw. Aug. 8, 2017) (noting that only the Second Circuit has extended *Kingsley*'s holdings to all pretrial detainee deliberate indifference conditions of confinement claims). After *Gordon*, however, district courts in the Ninth Circuit have applied the objective deliberate indifference standard to pretrial conditions of confinement claims generally. *See, e.g.*, *Turano v. Cnty. of Alameda*, No. 17-cv-06953-KAW, 2018 WL 3054853, at *6 (N.D. Cal. June 20, 2018) (finding the Ninth Circuit's reasoning in *Gordon* applies to conditions of confinement claims); *Smith v. Cnty. of Riverside Sheriff Dept.*, No. EDCV 17-1969-DSF (SP), 2019 WL 2880419, at *8 (C.D. Cal. Mar. 1, 2019) (finding that if plaintiff was a pretrial detainee, the objective deliberate indifference standard should apply to his "broader conditions of confinement claims").

To state a claim for deliberate indifference under the Fourteenth Amendment, a pretrial detainee must establish the following four elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk

> involved—making the consequences of the defendant's conduct obvious; and
> (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071. "With respect to the third element, the defendant's conduct must be objectively unreasonable." *Id.* (citing *Kingsley*, 576 U.S. at 396). The plaintiff must allege "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* The "'mere lack of due care by a [county] official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)).

Here, Plaintiff fails to allege facts sufficient to plausibly show that the September 19, 2019 strip search conducted by Deputy Campbell put him at substantial risk of suffering serious harm, that Campbell failed to take reasonable measures to abate that risk, or that a reasonable deputy in Campbell's position would have appreciated a high risk of harm existed under the circumstances. *Id.* Instead, Plaintiff merely concludes that the search conducted by Deputy Campbell and other unnamed deputies constituted "cruel and unusual punishment," was "friv[o]lous," and "unnecessary." *See* Compl., ECF No. 1 at 3-4. But without more, these types of conclusory allegations are also insufficient to state a plausible Fourteenth Amendment claim. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *cf. Belyew v. Honea*, No. 2:17-CV-0508 AC P, 2020 WL 1503438, at *1–2 (E.D. Cal. Mar. 30, 2020) (finding pretrial detainee's claims of having to perform a squat-and-cough procedure multiple times and despite being informed that the detainee could not bend at the knee because of severe back and knee problems as retaliation for having filed grievances sufficient to "support an inference of intentional harassment"), *report and recommendation adopted*, No. 2:17-CV-0508-KJM-AC P, 2020 WL 2992038 (E.D. Cal. June 4, 2020).

/ / /

/ / /

/ / /

For all these reasons, the Court **DISMISSES** Plaintiff's Complaint in its entirety for failing to state a claim upon which § 1983 relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *Williams*, 875 F.3d at 502; *Wilhelm,* 680 F.3d at 1121.

### III. Conclusion and Order

Based on the foregoing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 6).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's Complaint in its entirety for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

5. **GRANTS** Plaintiff 45 days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be

"considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2) and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: July 28, 2020

                                            Hon. Anthony J. Battaglia
                                            United States District Judge